**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VIVEK SHAH**, pro se,<br>     Plaintiff, | |
| v. | Case No. <u>1:21-CV-06148</u> |
| **NYP HOLDINGS, INC., ASSOCIATED NEWSPAPERS LIMITED, NEW YORK DAILY NEWS COMPANY, VOX MEDIA, LLC, THE SMOKING GUN, LTD., E! ENTERTAINMENT TELEVISION, LLC, THE ATLANTIC MONTHLY GROUP LLC, CBS STUDIOS, INC., INSIDE EDITION, INC., TELEPICTURES PRODUCTIONS, INC., ABC NEWS, INC., FOX NEWS NETWORK, LLC** and **DOES 1-100.**<br>     Defendants. | Honorable Sharon Johnson Coleman<br><br>Magistrate Judge Gabriel A. Fuentes |

**<u>FIRST AMENDED COMPLAINT</u>**

FOR DAMAGES, INJUNCTIVE AND DECLARATORY RELIEF

JURY TRIAL DEMANDED

**<u>PRELIMINARY STATEMENT</u>**

1.      Global media outlets have been exploiting Plaintiff's unlicensed copyrighted images of himself with celebrities, for substantial commercial gains for nearly a decade. While Plaintiff was incarcerated, each Defendant took advantage of his vulnerability, some perhaps believing Plaintiff was a "wacko"[1] that did not have the mental capacity to sue. For instance, The Post published 16 of Plaintiff's copyright protected images in its print publication as well as its online articles, without a license or Plaintiff's consent, and then falsified and misrepresented

---

[1] https://nypost.com/2012/08/24/aspiring-actor-accused-in-weinstein-plot-has-history-of-threats-money-obsessions-and-stealing-toilets-ex-roomie/

some of the facts of himself and his criminal case, casting him in an extremely negative light. Plaintiff is the author and owner of each copyright image alleged in this action and holds a valid Certificate of Registration issued by the Copyright Office.

## NATURE OF THE ACTION

2.      This is an action for copyright infringement under Section 501 of the Copyright Act. This action arises out of Defendant's unauthorized reproduction and public display of copyrighted photographs of Plaintiff that are owned by him. Accordingly, Plaintiff seeks monetary relief under the Copyright Act of the United States, as amended, 17 U.S.C. § 101 *et seq*.

3.      Plaintiff seeks injunctive, monetary, and declaratory relief against Defendants for engaging in illegal distribution of Plaintiff's copyrighted images.

4.      Plaintiff brings this action to address Defendants' unlawful conduct and to redress the harm he has suffered and will continue to suffer as a direct result of that conduct, absent relief.

## PARTIES

5.      Plaintiff Vivek Shah is a natural-born U.S. citizen. In August 2012, pursuant to a warrant issued by this Court, he was arrested by the FBI for Mailing Threatening Communications with intent to extort. He was sentenced in the Southern District of West Virginia to 87 months in prison, followed by 3 years of Supervised Release. On February 4, 2019, he was released from prison, and on February 4, 2020, his supervision was terminated by Honorable Jorge L. Alonso of this Court. His principal place of residence is 236 Woburn Ln, Schaumburg, IL 60173.

6.     Defendant NYP Holdings, Inc. is a Delaware corporation and is the owner of The New York Post ("The Post"), a conservative daily tabloid newspaper headquartered in New York City. It also operates NYPost.com, the celebrity gossip site PageSix.com, and the entertainment site Decider.com. Its distribution ranked 4th in the US in 2019. Its parent company is News Corp., a publicly traded company on the NASDAQ. Its principal place of business is 1211 Avenue of the Americas, New York, NY 10039.

7.     Defendant Associated Newspapers Limited ("ANL"), doing business as The Daily Mail ("Daily Mail") and dailymail.co.uk, is a company registered in England under company number 84121 with a registered office at Northcliffe Hose, 2 Street, London W8 5TT. Plaintiff does not currently have sufficient information or belief as to whether Daily Mail is a separate legal entity in its own right, or a "dba," division, or subsidiary of ANL. Daily Mail lists ANL as the "operator" and publisher of the site.

8.     Defendant New York Daily News Company ("Daily News") is an American newspaper based in New York City. It was founded in 1919 and was the first U.S. daily printed in tabloid format. Its parent company is Tribune Publishing, which is headquartered in Chicago, IL. Daily News has an estimated annual circulation of 200,000 as of 2017. Its principal place of business is 4 New York Plaza, New York NY 10004.

9.     Defendant Vox Media, LLC ("Vox") is an American mass media company based in Washington, D.C. and New York City. Vox is the owner and operator of its brand or subsidiary – New York Magazine ("NYM"). Plaintiff does not currently have sufficient information or belief as to whether NYM is a separate legal entity in its own right or a dba or brand of Vox. This is because NYM's website's terms state that its applications and services are provided by Vox. NYM is an American biweekly magazine concerned with life, culture, politics,

and style generally, and with a particular emphasis on New York City. As of 2018, it has a circulation of more than 400,000. NYM's website is located at https://nymag.com. Its principal place of business is 1201 Connecticut Ave. NW, 11th Floor, Washington, DC 20036.

10.     Defendant The Smoking Gun, Ltd. ("TSG"), operating as The Smoking Gun, is a website, located at https://thesmokinggun.com, that posts legal documents, arrest records, and police mugshots on a daily basis. It was founded in 1997 but officially incorporated in 1998. According to Similarweb,[2] it receives an estimated annual number of visitors of over 6 million. Its principal place of business is The Smoking Gun, 93 4th Avenue #1544, New York, NY 10003.

11.     Defendant E! Entertainment Television, LLC ("E!"), also known as E! News, previously known as E! News Daily and E! News Live, is the entertainment news operation for the cable network E! in the United States. Its former on-air weekday newscast debuted on September 1, 1991, and primarily reported on celebrity news and gossip, along with previews of upcoming films and television shows, regular segments about all those subjects, along with overall film and television industry news. Although the on-air network newscasts were discontinued in March 2020, the news operation continues to function in full through E!'s website: https://eonline.com. Its principal place of business is E! News, 30 Rockefeller Plaza, New York, New York 10112.

12.     Defendant The Atlantic Monthly Group LLC ("The Atlantic") is an American magazine and multi-platform publisher. The Atlantic Wire, the sister site of The Atlantic's online presence, TheAtlantic.com, was launched in 2009. It initially served to the purpose of aggregating news and opinions from online, print, radio, and television outlets. At its launch, it

---

[2] https://www.similarweb.com/website/thesmokinggun.com/#overview

published op-eds from across the media spectrum and summarized significant positions in each debate. It later expanded to feature news and original reporting. The Atlantic Wire rebranded itself as The Wire (Wire.com) in November 2013 and was folded back into The Atlantic the following year. Its principal place of business is The Atlantic, 600 New Hampshire Ave, N.W., Washington, D.C. 20037.

13.     Defendant CBS Studios Inc. ("CBS Studios"), d/b/a Entertainment Tonight ("ET"), is an American television production company which is a subsidiary of CBS Entertainment Group unit of ViacomCBS. Upon information and belief, CBS Media Ventures (formerly CBS Television Distribution and CBS Paramount Domestic Television) is an American television production and distribution company owned by CBS Studios. It is unclear to Plaintiff whether CBS Media Ventures is a distinct legal entity in its own right or is a dba of CBS Studios. According to a Press Release by CBS Media Ventures, it is the producer and distributor of ET.[3] Its principal place of business is CBS Studios, Inc., 4024 Radford Ave, Studio City, CA 91604.

14.     Defendant Inside Edition, Inc. ("Inside Edition") is an American news broadcasting newsmagazine program that is distributed in first-run syndication by CBS Media Ventures. Its principal place of business is Inside Edition, 555 W 57th St #1300, New York, NY 10019.

15.     Defendant Telepictures Productions, Inc. ("Telepictures") produces the television show "Extra." Telepictures is an American television show and filmmaking company, currently operating as a subsidiary of Warner Bros. Television Studios. Extra is an American syndicated news broadcasting newsmagazine. It is seen in more than 98% of the country and airs on major

---

[3] https://www.viacomcbspressexpress.com/cbs-media-ventures/shows/entertainment-tonight/about

market affiliates, including key stations owned and operated by FOX Television. Its principal place of business is Telepictures Productions, 3500 W Olive Ave, Burbank, CA 91505.

16.     ABC News, Inc. ("ABC") is the news division of Walt Disney Television's ABC broadcast network. One of its flagship program is the daily morning news-talk show Good Morning America ("GMA"). GMA features news, interviews, weather forecasts, special-interest stories, and feature segments. Its principal place of business is ABC News, 7 W 66th Street, New York, NY 10023.

17.     FOX News Network, LLC ("Fox News") is an American multinational conservative cable news television channel based in New York City. It is owned by Fox News Media, which itself is owned by the Fox Corporation. Fox News owns and operates Fox Business Channel ("FBC"), an American business news channel and website publication. It is a financial news channel delivering real-time information across all platforms that impact both Main Street and Wall Street. Its principal place of business is Fox News Network, 1211 Avenue of the Americas. New York, NY 10036.

18.     Upon information and belief, one or more persons and/or companies that have done business in, caused injury to Plaintiff, or which otherwise are located or may be conducting business in this district, but whose identities and/or roles in connection with the circumstances and subject-matter complained of herein are not fully known or disclosed to Plaintiff as of the filing of this action, are herein named as Defendants Does 1-100, and are either affiliated with or are otherwise distinct entities from the remaining named defendants, that directly or indirectly benefited from the conduct or similar conduct complained of herein, all in relation to the unlawful reproduction, display, dissemination and exploitation of the infringed photographic work described in this complaint.

19.     In acting or omitting to act as alleged herein, each Defendant was acting through its employees and/or agents and is liable on the basis of the acts and omissions of its employees and/or agents.

20.     In acting or omitting to act as alleged herein, each employee, officer or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by each Defendant as principal.

## JURISDICTION AND VENUE

21.     This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq*. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b).

22.     This Court has personal jurisdiction over The Post because:

a.  It publishes content on its website, https://nypost.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

b.  The Copyright Images, *infra*, were published on The Post's website and in print, that were intended for distribution to its viewers and readers in this district.

c.  Upon information and belief, it routinely subscribes residents of Illinois to its $4.99/mo recurring subscription of its product known as The Post Sports+.

d.  It offers multiple mobile apps to residents of Illinois, containing in-app purchases. *See*

https://play.google.com/store/apps/details?id=br.com.golmobile.nypost&hl=en_U

S&gl=US and https://apps.apple.com/us/app/new-york-post-for-ipad/id378590820.

23.   The Court has personal jurisdiction over ANL and Daily Mail because:

   a.   It is believed that Daily Mail publishes or is in control of publishing, distributing, and selling tabloid-type newspapers in both hard copy and online throughout the word, including Illinois and this judicial district. It is believed that Daily Mail itself and through its affiliates and agents do business on a daily basis in Illinois and within this judicial district.

   b.   It is believed that Daily Mail itself and through its affiliates and agents do business on a daily basis in Illinois and within this judicial district.

   c.   Daily Mail's website, https://dailymail.co.uk, is accessible and made available for viewing for residents of Illinois. That Daily Mail monetizes its online articles by ad placements, substantial revenue of which is generated by residents of Illinois and this judicial district.

   d.   ANL, through its trade names and dba as Mail Subscriptions, available online at https://mailsubscriptions.co.uk, allows purchasing subscriptions of its daily newspapers and digital content globally, including residents of Illinois.

   e.   Upon information belief, ANL, through its websites, tradenames and affiliates, has paid subscribers in Illinois and in this judicial district.

   f.   Daily Mail specifically targets consumers in the United States via its US Homepage, which is available online at https://www.dailymail.co.uk/ushome/index.html, generally, including to

consumers in Illinois and this judicial district. For example, one of the drop-down tabs is "U.S. Showbiz."

g. ANL is also believed to own and control a smartphone "app" called "MailOnline." Plaintiff does not yet know if MailOnline is a separate entity, a dba, or a division of ANL. The MailOnline App is available in Illinois and this judicial district from Apple iTuines. *See* https://apps.apple.com/us/app/mailonline-daily-news-updates/id384101264. It is also available in Illinois and this judicial district from the Google Play Store. *See* https://play.google.com/store/apps/details?id=com.dailymail.online&hl=en_US&gl=US. It is believed the ANL does business on a daily basis in Illinois and within this judicial district. Therefore, this court has personal jurisdiction over ANL.

24. The Court has personal jurisdiction over Daily News because:

a. It publishes content on its website, https://nydailynews.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

b. The Copyright Images, *infra*, were published on Daily News's website and in print, that were intended for distribution to its viewers and readers in this district.

c. Upon information and belief, it routinely subscribes residents of Illinois to its $3.99/wk recurring subscription of its online news articles

d. It offers multiple mobile apps to residents of Illinois and this district, containing in-app purchases. *See*

*https://play.google.com/store/apps/details?id=com.freerange360.mpp.NYDN&hl*

9

*=en_US&gl=US* and *https://apps.apple.com/us/app/new-york-daily-news/id354730788* and *https://apps.apple.com/us/app/daily-news-digital-edition/id406841105*.

25.     This Court has personal jurisdiction over NYM because:

a.   It publishes content on its website, https://nymag.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

b.   The Copyright Images, *infra*, were published on The Post's website and in print, that were intended for distribution to its viewers and readers in this district.

c.   Upon information and belief, it routinely subscribes residents of Illinois to its $35/year subscription of its digital access and print version of the magazine.

26.     This Court has personal jurisdiction over TSG because:

a.   It publishes content on its website, https://thesmokinggun.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

b.   The Copyright Images, *infra*, were published on TSG's website, that were intended for distribution to its viewers and readers in this district.

27.     This Court has personal jurisdiction over E! because:

a.   It publishes content on its website, https://eonline.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

    b. The Copyright Images, *infra*, were published on E!'s website and in its cable news programming, that were intended for distribution to its viewers and readers in this district.

    c. It offers multiple mobile apps to residents of Illinois, containing in-app purchases. *See*

      https://play.google.com/store/apps/details?id=com.rhythmnewmedia.android.e&hl=en_US&gl=US and https://apps.apple.com/us/app/e-news/id313624917.

28.    This Court has personal jurisdiction over The Atlantic because:

    a. It publishes content on its website, https://theatlantic.com, daily, which is distributed and accessible to residents of Illinois, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays on most of its pages.

    b. The Copyright Images, *infra*, were published on The Atlantic's website and magazine, that were intended for distribution to its viewers and readers in this district.

    c. It offers multiple mobile apps to residents of Illinois, containing in-app purchases. *See* https://apps.apple.com/us/app/the-atlantic-magazine/id397599894 and https://play.google.com/store/apps/details?id=com.theatlantic.newsstand&hl=en_US&gl=US.

29.    This Court has personal jurisdiction over CBS Studios because it broadcasts its channel, daily, which is distributed and accessible to residents of Illinois in this district, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays

during its broadcast. The Copyright Images, infra, were broadcasted for distribution to its viewers and readers in this district.

30.     This Court has personal jurisdiction over Inside Edition because it broadcasts its channel, daily, which is distributed and accessible to residents of Illinois in this district, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays during its broadcast. The Copyright Images, infra, were broadcasted for distribution to its viewers and readers in this district.

31.     This Court has personal jurisdiction over Telepictures because it broadcasts its channel, daily, which is distributed and accessible to residents of Illinois in this district, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays during its broadcast. The Copyright Images, infra, were broadcasted for distribution to its viewers and readers in this district.

32.     This Court has personal jurisdiction over ABC News because it broadcasts its channel, daily, which is distributed and accessible to residents of Illinois in this district, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays during its broadcast. The Copyright Images, infra, were broadcasted for distribution to its viewers and readers in this district.

33.     This Court has personal jurisdiction over Fox News because it broadcasts its channel, daily, which is distributed and accessible to residents of Illinois in this district, including Plaintiff. It generates substantial revenue from dozens of advertisements it displays during its broadcast. The Copyright Images, infra, were broadcasted for distribution to its viewers and readers in this district.

34.     This Court has authority to grant declaratory and injunctive relief under 17 U.S.C. § 502, 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Fed. Rules of Civ. P.

35.     This Court has supplemental jurisdiction over the state laws claim in this action under 28 U.S.C. § 1367(a) because it is also related to the federal claims asserted against Defendants so that it forms part of the same case or controversy under Article III of the U.S. Constitution. The Court furthermore has jurisdiction over the state law claims in this action under 28 U.S.C. § 1332(a)(1) and (a)(2) because the amount in controversy exceeds $75,000 and is between citizens of different States and/or citizens or subjects of a foreign state.

36.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c). A substantial part of the events and omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### A.     Plaintiff's Authorship and Ownership of the Photographs

37.     From in or around July 2008 through August 2012, Plaintiff worked as a professional actor in Hollywood, CA. He has been a member of the Screen Actors Guild since 2009. By means of his profession and other business relationships, Plaintiff obtained access to exclusive Hollywood events.

38.     At each event, Plaintiff carried a mobile phone with a camera and/or a compact digital camera (collectively, the "Photography Equipment"). Plaintiff would pre-select the Photography Equipment's shutter speed, white balance, ISO, metering type, exposure value, focus mode, a "Scene mode," resolution, shooting mode, color saturation, hue, contrast, brightness, and flash, *inter alia*.

39.     At all times, Plaintiff was the sole owner of the Photography Equipment and had carried with him such equipment for the primary purpose of having photos taken of himself with celebrities.

40.     From time to time, when Plaintiff met a celebrity, he would ask the person if he could have a photograph with him or her. Upon acknowledgement, Plaintiff would either ask a friend or a bystander if they would be willing to press the shutter button of his Photography Equipment upon his cue. After taking the photograph, the individual would immediately hand the Photography Equipment back to Plaintiff.

41.     For each photo, Plaintiff directed and posed the subjects of the photo, selected an appropriate place for the subjects to stand or face a direction, he had pre-selected the appropriate attire for himself, and exclusively decided how to express himself in the photo. Plaintiff retained, and intended to retain, at all times, sole decision-making authority as to what went into the photos.

42.     At all times, Plaintiff did not relinquish creative control to his friend or a bystander. He had come up with the ideas for the photos, decided who would be in it, gathered the photo's subjects around him, and then informed his friend or bystander to snap the photo in order to capture an image.

43.     Plaintiff had his photographs taken with over 100 celebrities during this time, 20 of which are as follows:

Copyright Image #1: A photograph of Vivek Shah and actress Amy Smart.

Copyright Image #2: A photograph of actor Samuel L. Jackson and Vivek Shah.

Copyright Image #3: A photograph of actress Kristen Stewart and Vivek Shah.

Copyright Image #4: A photograph of actress Mila Jovovich and Vivek Shah.

Copyright Image #5: A photograph of Vivek Shah and actor Bill Paxton.

Copyright Image #6: A photograph of Vivek Shah and actor Tom Cruise.

Copyright Image #7: A photograph of Vivek Shah and actor Zach Galifianakis.

Copyright Image #8: A photograph of actor Jonah Hill and Vivek Shah.

Copyright Image #9: A photograph of Vivek Shah and Danny DeVito.

Copyright Image #10: A photograph of actor Alec Baldwin and Vivek Shah.

Copyright Image #11: A photograph of actor Jesse Eisenberg and Vivek Shah.

Copyright Image #12: A photograph of singer Ozzy Osbourne and Vivek Shah.

Copyright Image #13: A photograph of actor Ray Romano and Vivek Shah.

Copyright Image #14: A photograph of Vivek Shah and media personality Paris Hilton.

Copyright Image #15: A photograph of actress Sofia Vergara and Vivek Shah.

Copyright Image #16: A photograph of Vivek Shah and actor Adrien Brody.

Copyright Image #17: A photograph of Vivek Shah and actress Angelina Jolie.

Copyright Image #18: A photograph of Vivek Shah and actor Tom Cruise.

Copyright Image #19: A photograph of Vivek Shah and actor Steve Buscemi.

Copyright Image #20: A photograph of Vivek Shah at the Golden Globes.

Collectively, the "Copyright Images."

44.     A true and correct copy of each of the above photos is attached hereto as Exhibit A.

45.     Plaintiff is the author of all 16 photographs and has at all times been the sole owner of all right, title and interest in and to the photographs, including the copyright thereto.

46.     Within a few hours or a few days of the photographs that were taken, Plaintiff uploaded all 16 of them to his personal Facebook account, some of which he later added to his IMDb page[4].

47.     IMDb (an acronym for Internet Movie Database) is an online database of information related to films, television programs, home videos, video games, and streaming content online – including cast, production crew and personal biographies, plot summaries, trivia, ratings, and fan and critical reviews.

48.     Plaintiff has complied with all registration and deposit requirements of the federal copyright laws and has obtained copyright registration for each of his Copyright Images under Certificate of Registration No. VA0002276104, effective November 17, 2021. A copy of the Registration, which includes the Infringed Work, is attached hereto within Exhibit I.

49.     Plaintiff has complied in all respects with 17 U.S.C. §§ 101 et seq. and has secured the exclusive rights and privileges to sue and collect damages for infringement of the Copyright Images in this action. Plaintiff has been and still is the sole entity with right to bring suit for infringement of the copyrights in the Copyright Images.

---

[4] https://www.imdb.com/name/nm2862542

**B.      Plaintiff's Arrest and Release**

50.      On August 10, 2012, Plaintiff was arrested by the FBI while he was visiting his parents in Schaumburg, IL. He was detained in at the Metropolitan Correctional Center in Chicago, IL while awaiting transfer to a jail in the Southern District of West Virginia.

51.      On August 22, 2012, a four-count Indictment was filed against Plaintiff.

52.      On September 11, 2013, after pleading guilty, Plaintiff was sentenced to 87 months imprisonment followed by three years of supervised release.

53.      On February 4, 2019, Plaintiff was released from prison.

54.      Soon upon Plaintiff's release from prison he discovered the infringing activities by Defendants as stated below.

**C.      The Post's Infringing Activities**

55.      On August 23, 2012, at or around 4:00am, The Post published an article on its website titled "Aspiring actor busted for attempted extortion of Harvey Weinstein: feds"[5] ("Article 1"). The article prominently features Copyright Images #1-14 in a carousel format. A true and correct copy of the article is attached hereto in Exhibit B. According to the attribution, credit was given to "IMDB/Facebook" for each of Copyright Images #1-14.

56.      On August 23, 2012, at or around 4:00am, The Post published another article titled "A star in his own mind"[6] ("Article 2"). A true and correct copy of the article is attached hereto in Exhibit B. The article provides a "+" sign, signifying a prior expandable image that was placed in it but was subsequently removed.

---

[5] https://nypost.com/2012/08/23/aspiring-actor-busted-for-trying-to-extort-millions-from-harvey-weinstein-feds/
[6] https://nypost.com/2012/08/23/a-star-in-his-own-mind/

57.     On August 23, 2012, at or around 4:00am, The Post published yet another article titled "Judge dumb'struck'"[7] ("Article 3"). The article prominently features Copyright Image #16. A true and correct copy of the article is attached hereto in Exhibit B. Importantly, the use of Copyright Image #16 had no relationship to the content of the article. According to the attribution, credit for Copyright Image #16 was given to "IMDB/Facebook."

58.     On August 23, 2012, at or around 7:18am, The Post published an article titled "Accused Weinstein extorter Vivek Shah parties with celebs"[8] ("Article 4"). The article prominently features Copyright Images #1-14. A true and correct copy of the article is attached hereto in Exhibit B. According to the attribution, credit was given to "IMDB/Facebook" for each of Copyright Images #1-14.

59.     On August 23, 2012, at or around 7:02pm, The Post published an article titled "Harvey Weinstein shaken by extortion attempt: report"[9] ("Article 5"). The article prominently features a cropped version of Copyright Image #14. A true and correct copy of the article is attached hereto in Exhibit B. The article does not provide any attribution to Copyright Image #14.

60.     On August 24, 2012, at or around 4:00am, The Post published an article titled "Aspiring actor accused in Weinstein plot has history of threats, money obsessions — and stealing toilets: ex-roomie"[10] ("Article 6"). The article prominently features Copyright Image #15. A true and correct copy of the article is attached hereto in Exhibit G. The article does not provide any attribution to Copyright Image #15.

---

[7] https://nypost.com/2012/08/23/judge-dumbstruck/
[8] https://nypost.com/2012/08/23/accused-weinstein-extorter-vivek-shah-parties-with-celebs/
[9] https://nypost.com/2012/08/23/harvey-weinstein-shaken-by-extortion-attempt-report/
[10] https://nypost.com/2012/08/24/aspiring-actor-accused-in-weinstein-plot-has-history-of-threats-money-obsessions-and-stealing-toilets-ex-roomie/

61. Articles 1-6 also appeared in print publications of The Post's daily newspaper, many of which were placed on its front page along with a copyright image.

62. On or around January 7, 2022, as direct result of the instant action, The Post removed the interlinking and on-page viewability of the Copyright Images from the aforementioned pages; however, it continues to store and maintain a copy of each of the Copyright Images on its servers, which images are accessible by the general public by means of a direct URL.[11]

63. Each Copyright Image appears on The Post's servers.

64. The Post did not license the Copyright Images from Plaintiff for its articles, nor did The Post have Plaintiff's permission or consent to publish the photographs on its website.

65. Neither Facebook nor IMDb licensed or sublicensed the photographs to The Post.

66. The Post's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it credited IMDb and Facebook when it knew that Plaintiff had uploaded the images to IMDb and Facebook's servers under the agreements with each, and 3) it licensed images of Harvey Weinstein - multiple times - from WireImage, a subsidiary of Getty Images, Inc., but not the Copyright Images from Plaintiff.

67. Upon information and belief, The Post routinely utilizes IMDb to gather information on people, has cited IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

68. Upon information and belief, The Post routinely utilizes Facebook to gather information on people, has cited Facebook thousands of times in its articles previously, and

---

[11] As an example: https://nypost.com/wp-content/uploads/sites/2/2013/08/vivekshah184809-768x949.jpg

knows that nearly all photos that are uploaded in a profile are uploaded by the subjects of the profiles themselves.

**D.     The Post's False Statements**

69.     In Article 1, The Post falsely stated that Plaintiff was "threatening to kill [Harvey Weinstein]."

70.     In Article 2, The Post falsely stated that 1) "[Plaintiff] was so proud of his snapshot with Tom Cruise, he e-mailed it to his parents in the Chicago suburb of Schaumburg, Ill., who believed him to be a successful actor," 2) Plaintiff "faked his way onto Hollywood red carpets," 3) "His other roles included a 2012 low-budget drama, 'Monday Morning,' in which he plays a 'liquor- store worker,'" and 4) Plaintiff "is also listed as the producer of 'Yeh Khula Aasmaan' a 2012 movie[.]"

71.     In Article 5, The Post falsely stated that 1) Plaintiff was a "wannabe actor," and 2) Plaintiff "threatened to kill [Harvey Weinstein]."

72.     In Article 6, as the caption of Copyright Image #15, The Post falsely stated: 1) "FRAUD," 2) that Plaintiff "threatened to kill Harvey Weinstein" and 3) that Plaintiff "liked to pretend he was a bigwig." In Article 6, it The Post also falsely stated that 1) Plaintiff "crashed Tinseltown events" and 2) the Criminal Complaint details Plaintiff "setting up a bank account in Cyprus."

**E.     Daily Mail's Infringing Activities**

73.     On August 22, 2012, at or around 3:12pm EST, Daily Mail published an article on its website titled "Actor, 25, 'threatened to kill movie titan Harvey Weinstein's family and tried to extort cash from Hollywood stars'"[12] ("Article 7"). The article prominently features Copyright

---

[12] https://www.dailymail.co.uk/news/article-2192162/Harvey-Weinstein-On-actor-Vivek-Shah-threatened-kill-movie-titans-family-extortion-scheme.html

Images #4, 7, 18 and 19. A true and correct copy of the article is attached hereto in Exhibit C. According to the attribution, copyright credit was given to "© IMDb" for each of Copyright Image #4, 7, 18 and 19.

74.     On August 23, 2012, at or around 10:40pm EST, Daily Mail published an article on its website titled "Harvey Weinstein calls extort letter 'scary' after actor 'threatened to kill his family'"[13] ("Article 8"). The article prominently features Copyright Images #4, 7, 18 and 19. A true and correct copy of the article is attached hereto in Exhibit C. According to the attribution, copyright credit was given to "© IMDb" for each of Copyright Image #4, 7, 18 and 19.

75.     On October 2, 2012, at or around 2:27pm EST, Daily Mail published an article on its website titled "'Expect at least one family member dead in the next year': Chilling threat from actor accused of trying to extort millions from Harvey Weinstein"[14] ("Article 9"). The article prominently features Copyright Images #4, 7, 18 and 19. A true and correct copy of the article is attached hereto in Exhibit C. According to the attribution, copyright credit was given to "© IMDb" for each of Copyright Image #4, 7, 18 and 19.

76.     Articles 7-9 also appeared in print publications of Daily Mail's daily newspaper, many of which were placed on its front page along with a copyright image.

77.     Each Copyright Image appears on Daily Mail's servers.

78.     Daily Mail did not license the Copyright Images from Plaintiff for its articles, nor did The Post have Plaintiff's permission or consent to publish the photographs on its website.

79.     IMDb neither licensed nor sublicensed the photographs to Daily Mail.

---

[13] https://www.dailymail.co.uk/news/article-2192873/Harvey-Weinsteins-shocked-reaction-wannabe-actors-murder-extort-plot--What-heck-Business-business-family.html
[14] https://www.dailymail.co.uk/news/article-2211855/Vivek-Shah-Indictment-shows-actors-chilling-extortion-threat-victims-like-Harvey-Weinstein.html

80.     Daily Mail's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it credited IMDb when it knew that Plaintiff had uploaded the images to IMDb's servers under the agreements with it, 3) it licensed images of Harvey Weinstein and other images of Plaintiff from Getty Images, Inc., but not the Copyright Images from Plaintiff, and 4) it knew that pursuant to the Terms of IMDb's website, copyright always belongs to Plaintiff and not IMDb.

81.     Upon information and belief, Daily Mail routinely utilizes IMDb to gather information on people, has cited IMDb in thousands of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

## F.     Daily Mail's False Statements

82.     In Article 7, Daily Mail falsely titled its article claiming that a source was quoted as Plaintiff "tr[ying] to extort cash from Hollywood stars" despite there being no such source and that factually there were no Hollywood stars attempted to have been extorted or otherwise involved as recipients or victims of Plaintiffs criminal case. Furthermore, it falsely claimed that Plaintiff had "sent extortion letters to several celebrities, including film stars[.]"

In Article 8, Daily Mail false claimed that Plaintiff had "threatened [Harvey Weinstein's] life[.]"

## G.     Daily News's Infringing Activities

83.     On August 23, 2012, at or around 12:24am, Daily News published an article on its website titled "Federal agents arrest wanna-be actor Vivek Shah in $13 million extortion plot targeting studio mogul Harvey Weinstein"[15] ("Article 10"). The article prominently features

---

[15] https://www.nydailynews.com/entertainment/tv-movies/federal-agents-arrest-wanna-be-actor-vivek-shah-13-million-extortion-plot-targeting-studio-mogul-harvey-weinstein-article-1.1142550

Copyright Image #17. A true and correct copy of the article is attached hereto in Exhibit D. According to the attribution, credit was given to IMDb for Copyright Image #17.

84.     On August 25, 2012, at or around 5:30pm, Daily News published another article titled "Harvey Weinstein extortion plot: Neighbors say Vivek Shah, wannabe actor indicted for celebrity shake-down threats, wasn't exactly criminal genius"[16] ("Article 11"). The article prominently features Copyright Image #20. A true and correct copy of the article is attached hereto in Exhibit D. According to the attribution, credit was given to IMDb for Copyright Image #20.

85.     On August 25, 2012, at or around 5:46pm, Daily News published another article titled "Extortion scheme aimed at Hollywood mogul Harvey Weinstein undone when cops intervene in roommate feud over a bag of cat food"[17] ("Article 12"). The article prominently features Copyright Image #20. A true and correct copy of the article is attached hereto in Exhibit D. The article fails to provide an attribution for credit.

86.     On September 12, 2013, at or around 3:09pm, Daily News published an article titled "Man sentenced to 7 years for extortion plot against Harvey Weinstein, others"[18] ("Article 13"). The article prominently features Copyright Images #4, 17, 18 and 20. A true and correct copy of the article is attached hereto in Exhibit D. According to the attribution, credit was given to IMDb for each Copyright Image.

87.     Articles 10-13 also appeared in print publications of Daily News's daily newspaper, many of which were placed on its front page along with a copyright image.

---

[16] https://www.nydailynews.com/news/crime/harvey-weinstein-extortion-plot-vivek-shah-bit-player-indicted-celebrity-shake-down-threats-article-1.1143261
[17] https://www.nydailynews.com/news/crime/extortion-scheme-aimed-hollywood-mogul-harvey-weinstein-undone-cops-intervene-roommate-feud-bag-cat-food-article-1.1144572
[18] https://www.nydailynews.com/news/national/man-sentenced-7-years-celeb-extortion-scheme-article-1.1453933

88.     Each Copyright Image appears on Daily News' servers.

89.     Daily News did not license the Copyright Images from Plaintiff for its articles, nor did Daily News have Plaintiff's permission or consent to publish the photographs on its website.

90.     IMDb neither licensed nor sublicensed the photographs to Daily News.

91.     Daily News's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it credited IMDb when it knew that Plaintiff had uploaded the images to IMDb's servers under the agreement with it, 3) it licensed an image of Harvey Weinstein from WireImage, a subsidiary of Getty Images, Inc., but not the Copyright Images from Plaintiff, and 4) it knew that pursuant to the Terms of IMDb's website, copyright always belongs to Plaintiff and not IMDb.

92.     Upon information and belief, Daily News routinely utilizes IMDb to gather information on people, has cited IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

**H.      NYM's Infringing Activities**

93.     On August 23, 2012, NYM published an article on its website titled "Struggling Actor Failed Miserably at Extorting Harvey Weinstein, Groupon Co-founder"[19] ("Article 14"). The article prominently features Copyright Image #6. A true and correct copy of the article is attached hereto in Exhibit E. The use of Copyright Image #6 does not provide any attribution.

94.     Articles 14 also appeared in print publications of NYM's bi-weekly magazine.

95.     The Copyright Image appears on NYM's servers.

---

[19] https://nymag.com/intelligencer/2012/08/harvey-weinstein-extortion-plot-vivek-shah-fails-miserably.html

96.     NYM did not license the Copyright Image from Plaintiff for its article, nor did it have Plaintiff's permission or consent to publish the photograph on its website or magazine.

97.     Neither Facebook nor IMDb licensed or sublicensed the photograph to NYM.

98.     NYM's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, and 2) it knew that Plaintiff had uploaded the image to Facebook and IMDb's servers under the agreement with it.

99.     Upon information and belief, NYM routinely utilizes Facebook and IMDb to gather information on people, has cited Facebook and IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

## I.     TSG's Infringing Activities

100.     On or around August 22, 2012, TSG published an article on its website titled "Man Busted In Harvey Weinstein Extortion Plot"[20] ("Article 15"). The article prominently features Copyright Images #7 and 17. It furthermore hyperlinks Copyright Images #6, 12 and 15 in the subdirectory /sites/default/files/assets/, of its website, where the images are hosted for public viewing. A true and correct copy of the article is attached hereto in Exhibit F. None of the Copyright Images provide an attribution.

101.     Each Copyright Image appears on TSG's servers.

102.     TSG did not license the Copyright Images from Plaintiff for its articles, nor did TSG have Plaintiff's permission or consent to publish the photographs on its website.

103.     Neither Facebook nor IMDb licensed or sublicensed the photographs to TSG.

---

[20] https://thesmokinggun.com/documents/harvey-weinstein-extortion-plot-723561

104.     TSG's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, and 2) it knew that Plaintiff had uploaded the images to IMDb and Facebook's servers under the agreements with each.

105.     Upon information and belief, TSG routinely utilizes IMDb to gather information on people, has cited IMDb in many of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

106.     Upon information and belief, TSG routinely utilizes Facebook to gather information on people, has cited Facebook thousands of times in its articles previously, and knows that nearly all photos that are uploaded in a profile are uploaded by the subjects of the profiles themselves.

### J.     E!'s Infringing Activities

107.     On August 23, 2012, at or around 10:40am, E! published an article on its website titled "Harvey Weinstein Victim of Extortion Plot by Fledgling Actor"[21] ("Article 16"). The article prominently features a four-photo collage of Copyright Images #4 and 17-19. A true and correct copy of the article is attached hereto in Exhibit G. According to the attribution, credit was given to IMDb for the collage of the Copyright Images.

108.     Upon information and belief, E! also published the Copyright Images in an episode of its television show in the month of August 2012.

109.     Each Copyright Image appears on E!'s servers.

110.     E! did not license the Copyright Images from Plaintiff for its articles, nor did E! have Plaintiff's permission or consent to publish the photographs on its website.

111.     Neither Facebook nor IMDb licensed or sublicensed the photographs to E!.

---

[21] https://www.eonline.com/news/340347/harvey-weinstein-victim-of-extortion-plot-by-fledgling-actor

112.    E!'s infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it credited IMDb when it knew that Plaintiff had uploaded the images to IMDb's servers under its agreements, and 3) it licensed images of Harvey Weinstein and Plaintiff elsewhere, from WireImage, a subsidiary of Getty Images, Inc., but not the Copyright Images from Plaintiff.

113.    Upon information and belief, E! routinely utilizes IMDb to gather information on people, has cited IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

**K.      The Atlantic's Infringing Activities**

114.    On August 23, 2012, The Atlantic published an article on its website titled "Harvey Weinstein Cast as Victim in a Failed Actor's Extortion Plot"[22] ("Article 17"). The article prominently features Copyright Image #17. A true and correct copy of the article is attached hereto in Exhibit H. The article does not provide any attribution to Copyright Image #17.

115.    Article 17 also appeared in print publications of The Atlantic's magazine.

116.    Copyright Image #17 appears on The Atlantic's servers.

117.    The Atlantic did not license the Copyright Image from Plaintiff for its article, nor did The Atlantic have Plaintiff's permission or consent to publish the photograph on its website.

118.    Neither Facebook nor IMDb licensed or sublicensed the photographs to The Atlantic.

119.    The Atlantic's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it knew that Plaintiff had uploaded the images to IMDb

---

[22] https://www.theatlantic.com/culture/archive/2012/08/harvey-weinstein-cast-victim-failed-actors-extortion-plot/324382/

and Facebook's servers under the agreements with each, and 3) it licensed an image of Harvey Weinstein but not the Copyright Image from Plaintiff.

120.    Upon information and belief, The Atlantic routinely utilizes IMDb to gather information on people, has cited IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

121.    Upon information and belief, The Atlantic routinely utilizes Facebook to gather information on people, has cited Facebook thousands of times in its articles previously, and knows that nearly all photos that are uploaded in a profile are uploaded by the subjects of the profiles themselves.

122.    On November 22, 2021, pursuant to the DMCA Takedown Notice provisions of 17 U.S.C. § 512, Plaintiff submitted a valid copyright violation notice to The Atlantic with the exact location of the infringing material, to its designated agent by email, signed by himself, along with his contact information and a statement that the complaint was made in good faith, that the notification was accurate, and under the penalty of perjury.

123.    On November 30, 2021, pursuant to the DMCA Takedown Notice provisions of 17 U.S.C. § 512, Plaintiff submitted a valid copyright violation notice to Yahoo! News for Copyright Image #17 appearing in one of its articles,[23] which article was replicated verbatim from The Atlantic's article, Article #17. The notice included the exact location of the infringing material, to its designated agent by email, signed by himself, along with his contact information and a statement that the complaint was made in good faith, that the notification was accurate, and under the penalty of perjury.

---

[23] https://news.yahoo.com/news/harvey-weinstein-cast-victim-failed-actors-extortion-plot-143623926.html?fr=sycsrp_catchall

124.     On December 17, 2021, Yahoo! News responded to Plaintiff's DMCA Takedown Notice with the response: "The content you wrote to us about was licensed to Yahoo from The Atlantic.  We have forwarded your notice to The Atlantic." Although Copyright Image #17 was removed from the article itself by Yahoo! News, the image still appears on its servers by means of a publicly accessible URL.[24]

125.     As of the filing of the instant Amended Complaint, The Atlantic has not responded to Plaintiff's DMCA Takedown Notice.

**L.     Infringing Activities of ET, Extra, Inside Edition, GMA and FBC**

126.     On or around August 23, 2012, ET, Extra, Inside Edition, GMA and FBC (collectively, the "Broadcast News Companies" or "Broadcast News Company") broadcasted to its worldwide audience, one or several of Copyright Image #1-20. Each broadcast prominently featured one or several of Copyright Image #1-20.

127.     According to the University of California, Los Angeles's Library's NewsScape archives,[25] and the Internet Archive,[26] each Broadcast News Company provided commentary as to Facebook being the source of the Infringing Work.

128.     None of the Broadcast News Companies licensed the Copyright Images from Plaintiff for broadcast, nor did any Broadcast News Company have Plaintiff's permission or consent to broadcast the photographs on worldwide.

---

[24] https://s.yimg.com/ny/api/res/1.2/sx2VCo5gTcSLmtt_zJj3cg--/YXBwaWQ9aGlnaGxbmRlcjt3PTcwNTtoPTQzNztjZj13ZWJw/https://s.yimg.com/uu/api/res/1.2/IHurU4Hzjbj1ceUex0iWeA-~B/aD0yNDg7dz00MDA7YXBwaWQ9eXRhY2h5b24-/http://media.zenfs.com/en_us/News/theatlanticwire/Harvey_Weinstein_Cast_as_Victim-46708af941d8d140d0758916ee56cd55
[25] http://tvnews.library.ucla.edu/search?search=%22vivek%20shah%22&start=03/01/2004&end=11/23/2021
[26] https://archive.org/details/FBC_20120824_040000_MONEY_With_Melissa_Francis/start/2878/end/2938?q=%22vivek+shah%22

129.    Neither Facebook nor IMDb licensed or sublicensed the photographs to the Broadcasting News Companies.

130.    Each Broadcast News Company's infringing conduct was willful since 1) it knew that Plaintiff was the owner of the Copyright Images, 2) it knew that Plaintiff had uploaded the images to IMDb and Facebook's servers under the agreements with each, and 3) it licensed others' images but not the Copyright Images from Plaintiff.

131.    Upon information and belief, each Broadcast News Company routinely utilizes IMDb to gather information on people, has cited IMDb in hundreds of its articles previously, and knows that most profile pages that contain an image are uploaded by the subjects of the pages themselves.

132.    Upon information and belief, each Broadcast News Company routinely utilizes Facebook to gather information on people, has cited Facebook thousands of times in its articles previously, and knows that nearly all photos that are uploaded in a profile are uploaded by the subjects of the profiles themselves.

**M.    Defendants' Conduct Cannot be Considered Fair Use**

133.    The copyright law's goal of promoting the Progress of Science and useful Arts, as provided in Article I, Section 8, Clause 8, of the United States Constitution, would not be better served by allowing the aforementioned use than by preventing it.

134.    The fact that Defendants are news reporting entities does not relieve themselves of their obligations to intellectual property laws.

135.    Defendants' use of Plaintiff's copyrighted work was not transformative. They added no value to Plaintiff's original work. Nor did they create new information, aesthetics,

30

insights or understandings of the original work when they exploited the copyrighted images for commercial use.

136.    In its most literal sense, Defendants stole Plaintiff's personal images by simply inserting the photos in their articles which only recited some factual information.

137.    Plaintiff's photographs are creative work, in that he directed and posed the subjects of the photos, in addition to selecting the appropriate place to stand and face a direction for background.

138.    Nearly all the copyrighted work was used as a whole and unedited version of Plaintiff's photographs. Defendants' use of the full-scale version and some cropped photographs belonging to Plaintiff failed to provide context to its potential readers to understand the criminal allegations against him.

139.    Plaintiff, either himself, or by means of his family or attorney, would have licensed the Copyright Images for secondary use. After all, he "intended to obtain publicity that he hoped would further his acting career." Plea Agreement, *United States v. Shah,* No. 5:12-cr-00172 (S.D.W.V. May. 9, 2013) (Doc. 85 at 10).

140.    Publishing the Copyright Images without permission effectively destroyed the primary market for its use. As the owner of the work, Plaintiff had the right to try to sell the Copyright Images to media outlets, if he decided to do so.

141.    By unlawfully publishing and *sensationalizing* the Copyright Images without a license, Plaintiff was effectively chilled from licensing them in the market.

**CAUSES OF ACTION**

**COUNT I - COPYRIGHT INFRINGEMENT**

**(17 U.S.C. §§ 106, 501)**

**Against All Defendants**

142.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

143.    Defendants infringed Plaintiff's copyright in Copyright Images #1-20 by reproducing and publicly displaying the photographs on their website. Defendants have not, and have never been, licensed or otherwise authorized to reproduce, publicly display, distribute and/or use the photographs.

144.    Defendants actually copied Plaintiff's photographs for commercial purposes. There is substantial similarity between Plaintiff's copyright-protected photographs and those used by Defendants in their various articles.

145.    The acts of Defendants complained of herein constitute infringement of Plaintiff's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

146.    Upon information and belief, the foregoing acts of infringement by Defendants have been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

147.    As a direct and proximate cause of Defendants' infringement of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to recover his actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

148.    Plaintiff further is entitled to recover his attorney's fees and full costs pursuant to 17 U.S.C § 505.

## COUNT II – DIGITAL MILLENIUM COPYRIGHT ACT
### (17 U.S.C. § 1202)
### Against The Post, ANL, Daily News, E!, and The Atlantic

149.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

150.    Articles 1, 3, 4, 7-11, 13 and 17 attributed copyright, authorship and source of the Copyright Images in IMDb and/or Facebook. Defendants knew or had reasonable grounds to know that Plaintiff was the true author of the Copyright Images and that credit belonged to Plaintiff, not IMDb or Facebook.

151.    That pursuant to 17 U.S.C. § 1202(c) of the Digital Millennium Copyright Act of 1998 ("DMCA") the identifying information so conveyed is deemed to be and constitutes "copyright management information" under the DMCA.

152.    That Defendants provided false copyright management information by claiming copyright and source in the name of IMDB and/or Facebook, and otherwise deliberately omitted and removed Plaintiff's name entirely from being connected with the Copyright Images, as used in Articles 1, 3, 4 7-11, 13 and 17.

153.    That at all times relevant, Defendants, in doing the acts and things complained of herein, intended to induce, enable, facilitate or conceal an infringement and violation of Plaintiff's copyright attribution, integrity and ownership rights under 17 U.S.C. § 1202(a)(1).

154.    Defendants have thereby violated the Digital Millennium Copyright Act, and Plaintiff's rights thereunder, and he has been caused to and has thereby, suffered and sustained financial damage and irreparable harm, for which Plaintiff's remedy at law is inadequate.

33

## COUNT III – LANHAM ACT § 43(a)

## (15 U.S.C. § 1125(a))

### Against The Post, ANL, Daily News, and E!

155. Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

156. At all times relevant, Defendants deliberately omitted or removed Plaintiff's name from the infringing and otherwise unlawful reproduction of the Copyright Images in Articles 1, 3, 4, 7-11 and 13.

157. Defendants, by their deliberate reproduction of the Copyright Images without Plaintiff's permission, evidenced their intentions to do and/or omit to do one or more of the following, *inter alia*: (i) to alter and/or modify Plaintiff's Copyright Images without his input or permission, (ii) to reproduce and publish the Copyright Images without any editorial participation from Plaintiff so that the infringing uses do not reflect his vision in connection with the written content and selection or manner of use(s) of Plaintiff's Copyright Images, and (iii) to tout and/or seek to associate the Copyright Images, their source and/or authorship, and the goodwill thereof, with the trade names, trademarks, and designations of IMDb and/or Facebook, *inter alia*, and all without the permission, consent, authorization or approval of Plaintiff.

158. In addition, Defendants intentionally and/or recklessly, caused Plaintiff's Copyright Images to be widely disseminated in derogation of their lawful duties to ensure that Plaintiff's name and goodwill be associated with his Copyright Images.

159. Consequently, Articles 1 and 3-13, and the unlawful reproduction of the Copyright Images therein purport to suggest, *inter alia*, (i) that the lawful copyright owner Vivek Shah has endorsed and approved of such selection and use(s) of his Copyright Images, or (ii) that

34

Defendants and/or some other person or firm are the creator and copyright owner of the Copyright Images, when in fact those suggestions, impressions and identifications are not true.

160.    Defendants' wrongful use and/or misuse of Plaintiff's name, identity and services, and misuse of his entitlement to receive proper photographic authorship and/or source attribution credit, are uses in commerce, and constitute acts of unfair competition and an infringement of Plaintiff's common law and statutory rights in his name, identity, and services.

161.    Defendants, through their continued public dissemination and monetization of the Articles stated herein, have engaged, and/or have threatened to continue to engage in the aforementioned conduct with the intent to deceive the public and others, or otherwise having the likelihood that such deception will be the result.

162.    Defendants' acts have been, and are threatened to be, committed with the intent to pass off their infringing Articles, specifically the Copyright Images, reproduced therein, as being those of IMDb and/or Facebook and/or as being disassociated from Plaintiff, and all to the deception of the public and others in violation of the Lanham Act, § 43(a) thereof.

163.    Defendants' acts, practices and conduct constitute unfair competition, false or misleading designation, description or representation, false advertising, and/or unfair and deceptive trade practices in that they are likely to cause confusion and mistake by the purchasing public and/or others with respect to the copyright protected images of Plaintiff, all in violation of the Lanham Act, § 43(a) thereof.

164.    The aforesaid false and misleading designations and impressions have caused, and are likely to continue to cause, Plaintiff irreparable harm and economic injury, for which Plaintiff's remedy at law is inadequate.

## COUNT IV – STATUTORY CONSUMER FRAUD
## (815 ILCS 505/2)
### Against All Defendants

165.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

166.     Defendants' aforesaid acts, practices and conduct constitute unfair and deceptive business practices and consumer fraud in violation of the Consumer Fraud and Deceptive Business Practices Act, Illinois Compiled Statutes, 815 ILCS 505/2 § 2.

167.     As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiff is likely to continue to be substantially injured in his business, including his reputation, resulting in lost income, diminished goodwill and loss of consortium.

168.     Defendants' unlawful actions described herein were, and are, intentional, willful, and malicious, and/or have been, and are, implemented with callous and reckless disregard for rights protected under federal and state law.

169.     By reason of the foregoing, Plaintiff has been and will be injured in an amount not yet ascertained.

## COUNT V – STATUTORY DECEPTIVE TRADE PRACTICES
## (815 ILCS 510/2)
### Against All Defendants

170.     Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

171.     Such conduct and acts aforesaid by Defendants constitutes unfair and deceptive trade practices within the meaning and intendment of the Illinois Compiled Statues, Chapter 815, Sections 510/2, §§ 2(a)(2), 2(a)(3), 2(a)(5), and 2(a)(12), thereof.

## COUNT VI – COMMON LAW UNFAIR COMPETITION
### Against All Defendants

172.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

173.    Defendants' aforesaid acts, practices and conduct are likely to cause confusion or mistakes in the minds of the purchasing public and others and constitute common law unfair competition by them against Plaintiff.

174.    As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiff has been and/or is likely to be substantially injured in his profession, including his reputation, resulting in lost income, diminished goodwill, reputation, and consortium.

175.    Plaintiff has no adequate remedy at law in that his name, identity and services are unique and represent to the purchasing public and others his identity, reputation and goodwill, such that damages alone cannot fully compensate him for Defendants' conduct.

## COUNT VII – UNJUST ENRICHMENT
### Against All Defendants

176.    Plaintiff realleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

177.    During the period from approximately August 22, 2012 through today, Defendants unjustly enriched themselves by wrongfully converting, taking, utilizing or managing the Copyright Images, all to the detriment of Plaintiff.

178.    Defendants gained and continue to gain substantial revenue from the Copyright Images which violates fundamental principles of justice, equity, and good conscience.

179.     As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiff has been and/or is likely to be substantially injured in his profession, including his reputation, resulting in lost income, diminished goodwill, reputation, and consortium.

180.     Accordingly, Defendants are liable to Plaintiff's damages, the exact amount to be proven at trial, arising out of their unjust enrichment.

## DEMAND FOR JURY TRIAL

181.     Under Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues triable as of right.

## REQUESTED RELIEF

182.     Plaintiff respectfully requests judgment as follows:

a.       That Defendants be adjudged to have infringed upon Plaintiff's copyright in the Copyright Images in violation of 17 U.S.C §§ 106 and 501;

b.       That Defendants be permanently enjoined from displaying, exhibiting, showcasing, licensing, sublicensing or otherwise retaining a copy of the Copyright Images on their website and servers;

c.       That Defendants be enjoined to use their Google Search Console account to remove Google's indexing of the Copyright Images or any other reference thereof;

d.       That Plaintiff be awarded his actual damages and Defendants' profits, gains or advantages of any kind attributable to each Defendant's infringement of Plaintiff's photographs;

e.       That Plaintiff be awarded punitive damages against each Defendant in an amount to be determined by the jury that would punish Defendants for their willful, malicious, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

f.      The Defendants be required to account for all profits, income, receipts, or other benefits derived by them as a result of its unlawful conduct;

g.      That Plaintiff be awarded his costs, expenses and attorney's fees pursuant to § 505;

h.      That Plaintiff be awarded pre-judgment interest;

i.      That the Defendants be liable jointly and severally; and

j.      Order such other relief as this Court deems just and equitable.

Dated: January 13, 2021

Respectfully submitted,

/s/ Vivek Shah

Vivek Shah
236 Woburn Ln
Schaumburg, Il 60173

## **VERIFICATION OF COMPLAINT**

I, Vivek Shah, hereby declare under penalty of perjury that the foregoing facts contained in this Complaint are true and correct to the best of my knowledge.

Executed on January 13, 2021

/s/ Vivek Shah
VIVEK SHAH